THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KARRY SHARP, a/k/a FRANK TURNER, Defendant-Appellant.

(No. 12630; ▮▮▮▮▮▮▮▮)

Fourth District—March 20, 1975.

*Supplemental opinion filed upon denial of rehearing April 25, 1975.*

John F. McNichols and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Jerry Finney, Assistant State's Attorney, and James E. Tueth, Law Student, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

An information was filed charging the defendant Frank Turner, a/k/a Karry Sharp, with driving after revocation of his license in violation of section 6—303 of the Motor Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, par. 6—303). The three-count information charged separate offenses: one on February 15, 1973; one on May 15, 1973; and the third offense on May 19, 1973. Jury verdicts of guilty were returned as to all three counts. Defendant appeals the conviction and the 1-year sentence imposed asserting that the State failed to establish the necesssary elements of the offense. We agree.

The following chronology of events is relevant to a consideration of the issue presented. The defendant, then under the name of Frank Turner, was convicted of burglary in April 1968 and placed on probation. A motor vehicle was used in connmection with that offense and accordingly on May 29, 1968, the Secretary of State issued an order of revocation of the driver's license which had previously been issued to Frank Turner. This revocation was pursuant to the then provisions of section 6—205(a)(3) of the Motor Vehicle Code (Ill. Rev. Stat. 1967, ch. 95½, par. 6—205(a)(3)). Also in 1968, another order of revocation was entered with reference to the same license for another statutory reason. It appears that in 1970 the defendant, under the name of Turner, made application for and was refused a license. Thereafter, in 1972, the defendant made application for a license under the name of Karry Sharp. A license was issued to the defendant under the name of Karry Sharp. On the application for the license in 1972, the defendant denied that his license had ever been revoked and he testified that he had never received a license under the name of Frank Turner nor did he receive notices of revocation of that license in 1968. This record indicates that the defendant has been known as Frank Turner and as Karry Sharp, and it appears from the probation report that the defendant was known to the arresting officers under both names. It further appears that the defendant's father's name is Will Sharp.

The license issued to the defendant under the name of Sharp in 1972 was cancelled by the Secretary of State under date of June 7, 1973, and the order of cancellation recites that the cancellation was due to the fact that the defendant was not entitled to the issuance of the driver's license because of the revocation in May and July of 1968. It is apparent that the offenses here charged were on dates subsequent to the time that the defendant obtained a driver's license and prior to the date of revocation. The issue on appeal thus is whether one can be guilty of driving

after revocation if the offense occurs prior to revocation. Further, of course, we must inquire into the question of the validity of a license obtained upon the basis of misinformation and whether such license would be void from the date of issuance.

■■ The offense of driving after revocation requires no particular intent, knowledge, or moral turpitude. (*People v. Jensen*, 24 Ill.App.2d 302, 164 N.E.2d 228, *aff'd*, 21 Ill.2d 52, 171 N.E.2d 16.) There are only two elements to the offense. First, the act of driving a motor vehicle on a public street or highway—it was not contended that element does not exist in this case; second, is driving at a time when one's license or privilege to drive has been cancelled or revoked. See *People v. Strode*, 13 Ill.App.3d 697, 300 N.E.2d 323.

■■ The revocation of the license in 1968 did not and would not preclude application for another license 1 year from the date of revocation. (See Ill. Rev. Stat. 1971, ch. 95½, par. 6—208.) We find no language in the statutes that in any way indicates that a license obtained under circumstances such as revealed by this record to be void *ab initio* as is contended by the State. On the contrary, the statutory scheme permits of cancellation or revocation for cause and included in the statutory cause for cancellation is that the applicant failed to give the required or correct information in his application. (Ill. Rev. Stat. 1973, ch. 95½, par. 6—201.) Cancellation of a driver's license means that the licensee "is no longer entitled to such license." (See Ill. Rev. Stat. 1971, ch. 95½. par. 1—110.) This statutory language clearly indicates that cancellation operates prospectively only and not retroactively. When examination is made into similar statutory provisions in other states, we find that a similar Wisconsin statute provides that its administrator may cancel a license upon a determination that the license was issued upon the basis of false statements as to any material matter. The Committee Notes indicate that a license thus obtained is not void from the date of issuance but void only after cancellation. (See Wis. Stat. Annot. 1971, sec. 343.25, Vehicle Code.) The Wisconsin Committee Notes, 1957, at page 238, indicate that one who thus obtains a license may be prosecuted under other applicable provisions of the statute. The same is true in Illinois. If the State can prove that the defendant knowingly acted fraudulently in his application, a possible prosecution exists by reason of section 6—302 of the Motor Vehicle Code. (Ill. Rev. Stat. 1973, ch. 95½, par. 6—302.) Revocation of a driver's license is effective only from the date that the revocation is ordered. (*People v. Suddoth*, 52 Ill.App.2d 355, 202 N.E.2d 120.) Cancellation of a license is nowhere in the statute indicated to be in any different category. We hold that a cancellation is effective only from the date of the order for cancellation and that such

order does not void the license from the date of its issuance. To hold otherwise, while arguably desirable, would do violence to the clear statutory scheme. Under such holding this record does not establish a necessary element of the offense, to-wit, driving after the cancellation, since the cancellation was subsequent to the date of the alleged offenses. Accordingly, the judgment of the circuit court of Macon County is reversed.

Judgment reversed.

SIMKINS, P. J., and GREEN, J., concur.

## SUPPLEMENTAL OPINION

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The People have filed a petition for rehearing in this case and vigorously contend that the reversal of this conviction is error. The petition for rehearing states in part as follows:

> "The legal consequences of such a ruling are preposterous. Nothing in the law requires an absurd result. If the instant ruling were allowed to stand, a person whose license is revoked could apply for a license using a fictitious name and, having obtained the second 'license,' use his perfidy to immunize himself from prosecution for driving on a revoked license. The person devious enough to abuse the licensing provisions, thus, gains an advantage over another who is not dishonest.
> The factual and legal situation in this case is quite simple. In 1968, the defendant's license and his privilege to obtain a license were revoked for a year and additionally until he properly qualifed for a license. In 1970, he attempted to do so and was rejected. He subsequently, in 1973, drove three times while his license and his privilege to obtain a license were revoked. In the meantime, he had obtained a 'license' using false information and specifically stating that his license had never been revoked. (R.77) Nonetheless, his privilege to obtain a license was never reinstated. The cancellation was not a revocation, but rather evidence that his license had not been properly reinstated."

The opinion as filed indicates that the defendant made application for and obtained a license in 1972 under the name of Karry Sharp. That license was cancelled on June 7, 1973. We are not persuaded that the cancellation voids *ab initio* the license thus obtained. We sought to point out in the opinion that one who knowingly and fraudulently obtains a license is subject to prosecution under other statutory provisions. The availability of that remedy removes any advantage that such fraudulent

1056

application would give over one who is not acting fraudulently. Accordingly, the petition for rehearing is denied.

Petition for rehearing is denied.

SIMKINS, P. J., and GREEN, J., concur.