THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ELVIN L. JORDAN, Defendant-Appellant.

Fourth District   No. 15331

Opinion filed April 25, 1980.—Supplemental opinion filed on denial of rehearing July 21, 1980.

CRAVEN, J., dissenting.

Richard J. Wilson and Jeffery D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard M. Baner, State's Attorney, of Eureka (Marc D. Towler and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Upon bench trial, defendant was convicted of driving while under the influence of intoxicating liquor and driving while his operator's license was suspended. (Ill. Rev. Stat. 1977, ch. 95½, pars. 11—501 and 6—303.) He appeals the conviction for license violation only and the concurrent sentences of 364 days as being excessive.

Defendant was charged with "driving while license suspended" in violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 6—303).

At the time of his arrest on September 30, 1978, defendant presented a Michigan driver's license. A certified copy of his Michigan driving record showed that such license was suspended in August 1978. The record also discloses that defendant's Illinois operator's license was suspended on January 5, 1971, and the certificate of the Illinois Secretary of State, dated November 3, 1978, states that defendant did not have a valid license on September 30, 1978, the date of his arrest.

As to each license, defendant was asked whether it had been suspended as of September 30, 1978, and as to each he responded "not to my knowledge." He here contends that the prosecution failed to prove that he had knowledge of the respective suspension of the licenses and that such knowledge is an essential element of the offense. *People v. Nunn* (1979), 77 Ill. 2d 243, 396 N.E.2d 27.

Upon cross-examination defendant conceded that in 1971 he had not

notified the Secretary of State of Illinois within 10 days that he had moved from his Gridley address as is required by section 6—116 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 6—116). The Illinois Secretary of State has certified that all statutory notices upon such suspension of license were given upon such evidence. The matter of defendant's knowledge was an issue for the trier of fact.

The issue of the liability of this defendant is considered in the context of the statutory scheme of the Illinois Vehicle Code, section 6—210 (Ill. Rev. Stat. 1977, ch. 95½, par. 6—210), which provides:

"Any resident or *nonresident* whose drivers license or permit or privilege to operate a motor vehicle in this State has been suspended or revoked as provided in this Act *shall not operate a motor vehicle in this State*:

(1) During the period of such suspension, except as permitted by a restricted driving permit issued under the provisions of Section 6—206 (b) 2 of this Act; or

(2) * * * ." (Emphasis added.)

This record discloses a certified copy of an "ORDER OF SUSPENSION" issued by the Secretary of State, State of Illinois, effective January 1, 1971, which states upon the face:

"Pursuant to the requirements of Section 6—306 of the Illinois Vehicle Code, there has been received in my office a notice of a court order entered against the person named herein for failure to appear and answer a charge of an offense committed against traffic regulations governing the movement of motor vehicles after depositing his license in lieu of bail.

Therefore, it is HEREBY ORDERED that any and all drivers' licenses or permits issued to such person, the privilege of operating a motor vehicle, the privilege of obtaining a license in this State, be and are hereby SUSPENDED, on the effective date shown above as provided under the authority shown upon this Order."

The certificate of the Secretary of State, State of Illinois, dated November 3, 1978, certifies "that all statutory notices required as a result of any driver control action taken have been properly given."

The certification includes a particular statement added to the form: "I FURTHER CERTIFY Elvin L. Jordan, File No. J635-2124-5204, did not have a valid drivers' license on September 30, 1978."

In section 6—306 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 6—306), the underlying offense requiring suspension provides for the deposit of an operator's license in lieu of bail. Subparagraph (d) provides that if the operator does not appear as required upon the charge for which the operator's license was deposited in lieu of bail, the clerk of

the court shall notify the Secretary of State and forward the "licensee's license within 21 days," and continues:

> "The Secretary of State, when notified by the clerk of such court that an order of failure to appear to answer such charge after depositing license in lieu of bail has been entered, shall immediately suspend the drivers license of such licensee without a hearing and shall not remove such suspension, nor issue any hardship license or privilege to such licensee thereafter until notified by such court that the licensee has appeared and answered the charges placed against him."

We can conclude that under the statutory structure the conviction for driving with a suspended license must be affirmed upon the rationale of *People v. Turner* (1976), 64 Ill. 2d 183, 354 N.E.2d 897. In *Turner*, defendant's operator's license was revoked in 1968 following his conviction of a felony in which a motor vehicle had been used. In 1970 defendant's application for a license under the name of Turner was refused. In 1972 defendant made application for a license using the name Sharp, by which he was sometimes also known. In that application he stated that his license had never been revoked. In 1973, defendant was convicted of driving with a revoked license. Subsequently, the Secretary of State revoked the license issued in 1972 to defendant as Sharp, reciting that the defendant was "not entitled to the issuance of a drivers' license by reason of the revocation in 1968."

Upon review *sub nom. People v. Sharp* (1975), 26 Ill. App. 1051, 326 N.E.2d 213, the appellate court, taking as a premise that the revocation in 1968 did not preclude application for a new license within one year, determined that the issue was whether the defendant could be guilty of driving with a revoked license prior to the last revocation, and concluded that the license issued in 1972 was not void *ab initio* as contended by the prosecution. By supplemental opinion upon rehearing, the appellate court held that any fraud in procuring a license as Sharp could be prosecuted separately for that offense.

The supreme court reversed the appellate court upon the conclusion that the procuring of a license as Sharp was fraudulent and that the Secretary of State was prohibited from issuing a license to defendant by the terms of section 6—103(3) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 6—103(3)). The opinion of the supreme court stated:

> "The legislature has established through section 6—208 the procedure to have driving privileges restored. It calls for the disclosure of the revocation or other action taken against the applicant and then provides that the Secretary shall not issue a license until he has investigated the applicant and determined that to grant the privilege of driving on the highways will not endanger the public safety or welfare.

The Secretary of State had revoked the defendant's license, and it could be restored only upon compliance with the provisions of the statute. The defendant, of course, did not comply with the provisions of section 6—208. His privilege to drive was not restored through his fraudulently obtaining a license under the name 'Karry Sharp.' " 64 Ill. 2d 183, 186-87, 354 N.E.2d 897, 899.

Section 6—208, referred to in the *Turner* opinion, contains the language that a person whose license has been revoked "shall not be entitled to have such license or permit or privilege renewed or restored." Section 6—306(d), relevant here, contains the comparable language that the Secretary "shall not remove such suspension, nor issue any hardship license or privilege to such licensee thereafter until notified by such court that the licensee has appeared and answered the charges placed against him."

■■ We conclude that the policy of requiring compliance with the legislative provision concerning a license suspended pursuant to section 6—306 is governed by the rationale stated in *Turner*, and that the defendant here acquired no driving privilege in Illinois as a purported nonresident using a Michigan license.

Section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 6—303) provides that one who drives on the highway while his license is suspended or revoked "shall be guilty of a Class A misdemeanor and *shall be imprisoned* for not less than 7 days." (Emphasis added.)

Defendant argues that the sentences of incarceration imposed on November 16, 1978, demonstrate an abuse of judicial discretion. Section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—4.1), effective February 1, 1978, provides that upon appeal of any felony there is a rebuttable presumption that the sentence imposed by the trial court is proper. By its terms, the legislature does not apply such standards as to sentences imposed for misdemeanors. Supreme Court Rule 615(b)(4) provides that the reviewing court may "reduce the punishment imposed by the trial court." (73 Ill. 2d R. 615(b)(4).) The rule does not enlarge upon the manner of the proper exercise of the power. In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the supreme court again stated that the trial court's determination is entitled to great deference and weight, and absent an abuse of discretion the sentence will not be altered upon review.

Defendant's counsel advised the trial court that he believed there was no reason for a presentence report to be prepared. No proof in mitigation was offered other than a statement that defendant was employed. The trial court inquired concerning any recommendation and the State's Attorney advised that a fine of $500 was recommended upon the conviction of driving while intoxicated and a sentence to the county jail upon the charge of driving with a suspended license.

It is argued that the State's Attorney had recommended a sentence of 7 days in the county jail upon the charge of driving with a suspended license. At trial the assistant State's Attorney actually recommended a sentence to the county jail, but advised the court that prior to the setting of the bench trial his superior had suggested the mandatory sentence of 7 days. The record shows that the date of the bench trial was set on October 5, 1978. The copy of the "Michigan driving record" was certified on October 9, 1978. The bench trial was later continued to November 15, 1978. The certificate of the Secretary of State, State of Illinois, is dated November 3, 1978. It is reasonable to conclude that any negotiating suggestion of sentence for driving with a suspended license made prior to October 5, 1978, was made without knowledge of the violations which appeared in the record before the trial court.

At the sentence hearing, the trial court inquired as to defendant's record. An abstract of his driving record certified by the Secretary of State, State of Michigan, discloses that following the suspension of defendant's Illinois operator's license in 1971, the defendant was convicted of various driving offenses in Missouri in 1976; his conviction in 1977 of driving while under the influence of intoxicating liquor in Missouri and driving while his license was suspended, followed by the suspension of his Missouri license for four months; that in February 1978, defendant was convicted in Michigan of driving while his actions were impaired; and that thereafter his license in Michigan was suspended. It appears that in 1978 his Michigan operator's license was suspended twice and had been suspended at the time of the offenses on appeal.

● 2 The trial court made oral findings that from defendant's attitude and history the offenses for which he was convicted were likely to reoccur and would constitute a hazard to the public. We agree that his record discloses a persistent pattern of repeated major driving offenses during the last several years and demonstrates a complete disregard of the laws regarding the operation of motor vehicles. We cannot say that the sentences are at variance with the purpose and spirit of the laws regarding the operation of motor vehicles. (*People v. Twitty* (1975), 25 Ill. App. 3d 1065, 324 N.E.2d 222; *People v. Johnson* (1978), 64 Ill. App. 3d 377, 380 N.E.2d 1095.) We do not find the sentences excessive.

The judgments are affirmed.

Affirmed.

GREEN, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

This appeal concerns only the offense of driving while defendant's operator's license was suspended and the 364-day sentence imposed for that offense. The defendant appeals the sentence only in connection with his other conviction of driving while under the influence. The sentence imposed for that offense was 364 days, the sentences being concurrent, although the trial court expressed regret that he could not make them consecutive.

As I view this record, an offense of driving while a license was suspended was not established and the sentences imposed were clearly and patently excessive. The majority opinion establishes an absolute liability offense and places the burden upon the defendant to negate guilt. The defendant is even denied credit for time served in jail prior to the commencement of the penitentiary sentence, although he asks for credit for time served *and the State concedes the merit of the issue.*

As I read the majority opinion, it affirms the defendant's conviction for driving a motor vehicle in Illinois while his *Illinois* license to drive was suspended. As I read the State's brief, the very first issue they tender is that the "defendant was proved guilty beyond a reasonable doubt of driving while his license was suspended where it was shown that he drove a motor vehicle while his Michigan license was suspended." The State emphatically and expressly contends that the defendant's alleged lack of knowledge of the suspension was irrelevant. It seems, therefore, that the majority opinion affirms the conviction for an offense different from the conviction as understood by the prosecution, a strange circumstance indeed.

It is necessary to recite the facts.

On September 30, 1978, the defendant was charged with driving while under the influence and driving while his license was suspended. The latter charge was made by a uniform traffic ticket alleging that the actions of the defendant were in violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 6—303).

At the bench trial, Officer Gary Dixon of the El Paso, Illinois, police department testified that in September of 1978 he saw the defendant's vehicle on a street in El Paso. He said the automobile was being driven in excess of the speed limit. He followed it for several blocks, with his red lights on, but not his siren. At an intersection in the city, the driver of the car ran a stop sign. He ultimately stopped the car after pulling into a driveway. The officer came up to the car, asked the driver for his driver's license and was handed a Michigan driver's license. The officer further testified that he had to calm the defendant because he was hollering and was belligerent.

Harold Backer, a breathalyzer machine inspector for the State of

Illinois, testified that he had certified a certain breathalyzer machine and that it was working properly. An operator, Susan Rixie, testified that she performed two breathalyzer tests on the defendant and that one showed .12% alcohol and the second test showed that he registered .13%. At the conclusion of the testimony of these witnesses, the People rested. The defendant objected to the People's tender of exhibit No. 3, the defendant's driving record from Michigan, on the basis of hearsay. The exhibit was admitted, as was exhibit No. 4, being a copy of an Illinois order of suspension entered January 5, 1971, and a certificate from the Secretary of State of Illinois that states that the defendant did not have a valid driver's license on September 30, 1978. Exhibit No. 4, of course, relates to an Illinois driver's license.

The defendant in this case testified indicating that he was 33 years old, worked on the night shift at Fabro in Gridley, Illinois. He had moved to his present address in El Paso, Illinois, on the date of the alleged violation.

At approximately 1:45 a.m. on that date, he entered his car and proceeded toward his new residence by a route substantially different from that testified to by Officer Dixon. When the defendant arrived at his address, he got out of his car and walked up to the trailer door, then proceeded back to his automobile to pick up some medication that he said he left in the car. He testified that he had not eaten and that he was taking the medication, the side effect of which was to make his speech slurred and his eyes appear to be glassy. The exchange between the defendant and the officer at the time of the arrest relates primarily to the driving-while-under-the-influence charge which is not here contested. The only thing relevant to the issue of driving with a suspended license is that the defendant testified that on September 30 he did not know that his Michigan driver's license was suspended. He further testified that in 1971 he did not notify the State of Illinois within 10 days after moving from his R.R. #1, Gridley, Illinois, address. The defendant testified further that he had never received a notification that his license had been suspended from the State of Michigan or from the State of Illinois.

The court found the defendant guilty of speeding, stop sign violation, driving under the influence, and driving while his license was suspended and proceeded, without objection, to sentencing. The State recommended a $25 fine for the stop sign violation, a $25 fine for the speeding violation, a $500 fine for the driving-while-under-the-influence violation, and a 7-day jail sentence for the offense of driving with a suspended license. Defense counsel interposed a further recommendation with reference to the jail sentence that the incarceration should be periodic so as to permit the defendant to continue his employment. The trial court, after listening to the recommendations and the discussion,

imposed the fine for speeding, a $50 fine for the stop sign violation, and imposed two concurrent terms of 364 days in the penitentiary for the offense of driving under the influence of alcohol and driving while his license was suspended. The trial court, noted the background of the defendant with reference to traffic offenses and observed: "[F]rankly the Court is a little sorry that in the opinion of this Court the code of corrections prevents the Court from imposing a consecutive sentence on those offenses, 1005—8—4, shall not impose consecutive sentences for offenses which were committed as a part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. And mittimus shall issue."

There is no evidence in this record that the defendant was given or received a notice of a suspension of his Michigan license. The only thing in the record relevant to that issue is the defendant's testimony that he did not. It appears to be the thrust of the majority opinion that the defendant can be found guilty and that knowledge of the suspension was irrelevant. At least that is the burden of persuasion undertaken by the State in its brief.

If that is the contention, it is, I believe, clearly contrary to the express holding of the Illinois Supreme Court in *People v. Nunn* (1979), 77 Ill. 2d 243, 396 N.E.2d 27. In that case, the court specifically held, contrary to the People's contention here, that knowledge was a necessary ingredient of an offense wherein incarceration is sought to be imposed as a penalty. The offenses under discussion in *Nunn* related to section 11—401 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—401) and driving with a suspended license under the statute involved here, section 6—303 (Ill. Rev. Stat. 1975, ch. 95½, par. 6—303). The discussion in *Nunn* with reference to absolute liability offense and the necessary element of knowledge seemed applicable to both offenses. Express holding of the court was:

> "We consider that to show a violation of section 11—401 the prosecution is required to prove that the accused had knowledge that the vehicle he was driving was involved in an accident or collision. We do not, however, hold that it is necessary for the prosecution to show also that the accused knew that injury or death resulted from the collision. To require this additional proof would impose a burden that would be unrealistically difficult to sustain and would tend to defeat the public interest which is served by requiring persons involved in vehicle collisions to stop and provide identification and other personal information and to be available to render assistance if required." 77 Ill. 2d 243, 252, 396 N.E.2d 27, 31.

The offense of driving with a suspended license is not established. I would reverse that conviction, vacate the sentence imposed, and remand

for a new sentencing hearing on the conviction for driving under the influence. The record here indicates that the defendant was in the penitentiary for 4½ months prior to his release on bail by order of this court. As an alternative, we should consider reducing the sentence to time served.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE TRAPP delivered the opinion of the court:

A petition for rehearing urges that defendant was not granted credit for 4 days in custody prior to his release on bail. The claim was not presented in the briefs as an issue for review or raised in the points and authorities.

By reason of the provisions of section 5—8—7(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—7(b)), defendant must be given credit upon the ultimate sentence for time spent in custody as a result of the offense for which sentence was imposed. *People v. Scheib* (1979), 76 Ill. 2d 244, 390 N.E.2d 872.

In *Scheib*, the issue originated in the fact that the trial court denied credit for time in custody when probation was revoked and sentence imposed.

Upon the adoption of the Unified Code of Corrections, section 5—4—2(e)(4) (Ill. Rev. Stat. 1977, ch. 38, par. 1005—4—1(e)(4)), provided that the clerk of court shall transmit to the agency to which defendant was committed:

"(4) the number of days, if any, which the defendant has been in custody and for which he is entitled to credit against the sentence. ❋ ❋ ❋"

Effective November 14, 1973, the section was amended to add to the quoted provision "which information shall be provided to the clerk by the sheriff; ❋ ❋ ❋."

The tenor of the Act is that the reporting of the time to be credited upon the sentence is an administrative act, rather than a judicial act upon the part of the trial court. Thus, in *People v. Johnson* (1974), 23 Ill. App. 3d 886, 895, 321 N.E.2d 38, 46, the court stated:

"Although it would appear that such credit could more conveniently be computed and allowed by the Department of Corrections, it has been the practice of some trial judges to compute and allow this credit and to amend the *mittimus* accordingly. We believe that it does not matter how it is accomplished, as long as the credit is given as required."

The statement by defendant that "the trial court failed to give the defendant credit for 5 days that he served in jail prior to making bond" is not clearly apparent in the record. The brief only cites a portion of the report of proceedings wherein defendant testified as to being in custody as an incident to his testimony during trial.

■ Upon the apparent concession of the State's Attorney that there was a denial of credit for time in custody, we modify the opinion to remand the cause to the circuit court with directions that defendant be given any appropriate credit upon sentence for time spent in custody.

Mr. Justice Craven would grant rehearing. A majority of the panel would deny rehearing. Rehearing denied.

The judgment of conviction and sentence are affirmed and the cause is remanded with directions.

GREEN, J., concurs.

CRAVEN, J., dissents.