People of the State of Illinois, Plaintiff-Appellee, v. Emmit Suddoth, Defendant-Appellant.

Gen. No. 49,532.

First District, First Division.
October 19, 1964.
Rehearing denied November 9, 1964.

Washington and Durham, of Chicago, for appellant.

Daniel P. Ward, State's Attorney, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Defendant, Emmit Suddoth, in a bench trial, was found guilty of driving an automobile while his operator's license was revoked, in violation of section 6–303 of the Illinois Motor Vehicle Law (Ill Rev Stats 1961, c 95½). He was sentenced to the House of Correction for 7 days. He prosecutes this appeal, contending he was not guilty of the offense charged, because at the time of his arrest he was eligible to apply for an operator's license.

The record includes an agreed statement of facts. It stands admitted that defendant did not have a valid operator's or chauffeur's license when arrested in Chicago on April 19, 1963. In 1958, defendant was convicted of driving an automobile while under the influence of intoxicating liquor, and, as directed by statute, the Secretary of State on August 8, 1958, revoked defendant's license to operate a motor vehicle. Approximately one year from the date of revocation, defendant was informed by the office of the Secretary of State that he was eligible to apply for a new license by following certain procedures outlined in that communication. There is nothing in the record to show that defendant applied for a new license.

The pertinent part of section 6–303, under which defendant was charged and convicted, is:

"(a) Any person who drives a motor vehicle on any highway of this State at a time when his operator's or chauffeur's license or permit or privilege so to do or his privilege to obtain a license or permit under this Act is revoked or suspended as provided by this Act or any other Act, except as may be allowed by a restricted driving permit issued under this Act, shall be punished by imprisonment for not less than 7 days nor more than 1 year and there may be imposed

in addition thereto a fine of not more than $1,000."

Defendant contends that since he had the right, pursuant to section 6–208, to make application for a license "after the expiration of 1 year from the date of revocation" at any time "on or after August 8, 1959, he was not in violation of the statute with which he was charged on April 19, 1963, because his privilege to obtain a license or permit was not revoked at that time. Defendant was not in violation of the statute with which he was charged."

The People contend that since the defendant was charged and convicted of the crime of driving while his operator's license was revoked and was *not* charged or convicted of the separate offense of *driving while the privilege to obtain a license was revoked,* it is immaterial, under the terms of section 6–303, whether at the time of his arrest defendant had the privilege of obtaining a license on a proper application. The People argue that under section 6–208(b), once a driver's license has been revoked, he is not entitled, as a matter of right, to have it renewed. The People also argue that the Secretary of State is not required to restore the license because of the expiration of one year. To the contrary it must first be determined, by investigation, whether the granting of a new license will endanger the public safety or welfare.

In order to ascertain the intent of the legislature, sections 1–157, 6–208(b) and 6–210 must be read together with section 6–303. Section 1–157, which defines "Revocation of operator's or chauffeur's license," states that the termination "of a person's license or privilege to operate a motor vehicle on the public highways, . . . shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the

Secretary after the expiration of at least one year after the date of revocation." Section 6–208(b) states in part that "any person whose license or permit or privilege to drive a motor vehicle on the highways has been revoked shall not be entitled to have such license or permit or privilege renewed or restored. However, such person may make application for a license . . . (2) . . . after the expiration of 1 year from the date of revocation." Section 6–210 reads, in part, that any resident "whose operator's or chauffeur's license or permit or privilege to operate a motor vehicle in this State has been suspended or revoked as provided in this Act shall not operate a motor vehicle in this State . . . (2) After such revocation until a license is obtained when and as permitted under this Act . . . ."

██ The foregoing provisions, when read together with section 6–303, mean that before a person who has had his license revoked can be allowed to operate a motor vehicle on the highways of this State, he must obtain a new license. Defendant's revoked license was terminated from the date of its revocation. His right to apply for a new license, of itself, does not restore any driving privileges. There is no automatic restoration of driving privileges after the expiration of the one-year period provided for in section 6–208. A person who has had his driver's license revoked must reapply, qualify for, and have issued to him, a new operator's license before he is properly licensed to drive.

██ We believe, also, that section 6–303 must be read in the disjunctive. It applies to any person who drives a motor vehicle "at a time when his operator's or chauffeur's license or permit *or* privilege so to do *or* his privilege to obtain a license or permit under this Act is revoked or suspended . . . ." (Emphasis supplied.) Section 6–303 is intended to cover

a driver whose driving status may have been within any one of the disjunctive categories set forth, and a charge based on any one of these categories is sufficient to bring the offense within the terms of section 6–303. We hold the agreed facts are sufficient to support defendant's conviction of the offense of which defendant stood charged.

In view of our holding that section 6–303 applies to the instant factual situation, we find no merit in defendant's further contention that a 1963 amendment to the penalty provision of section 6–401(c), increasing the penalty for "unlicensed driving" by a person who drives "after the expiration of a period of suspension or revocation," is significant, in that it indicates that the legislature believed that section 6–303 did not apply to the instant situation. Defendant, in arguing that section 6–401(c) applies because the period of revocation here has expired, fails to properly distinguish the concepts of suspension and revocation. *Suspension* allows the temporarily inoperative privilege to drive to be reinstated. *Revocation* is the formal termination of a person's license or privilege to operate a motor vehicle and requires the procurement of a new license or permit or privilege before one can lawfully operate a motor vehicle on the highways of this State. This was not done here.

For the reasons given, the judgment is affirmed.

Affirmed.

BURMAN and KLUCZYNSKI, JJ., concur.