# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Heritsch*, 2012 IL App (2d) 090719

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH HERITSCH, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-09-0719 |
| Filed | June 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant's driver's license was revoked in 1991 for his use of a car to commit a drug-related felony and he "never got his license back," but his license was revoked again in 2001 because of a DUI, he was improperly convicted in 2008 of aggravated driving with a revoked license, since the statute provides for only one revocation of a driver's license, defendant's 1991 revocation was not based on a DUI violation, he was only guilty of driving with a revoked license, and the 2001 revocation had no effect where defendant had not been issued a new license; therefore, the cause was remanded for resentencing on the reduced conviction of driving with a revoked license. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 08-CF-4179; the Hon. Richard A. Lucas, Judge, presiding. |
| Judgment | Affirmed as modified; cause remanded. |

| Counsel on Appeal | Thomas A. Lilien and Darren E. Miller, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Barry W. Jacobs, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion. Justice McLaren concurred in the judgment and opinion. Justice Birkett dissented, with opinion. |

**OPINION**

¶ 1      After a stipulated bench trial, defendant, Kenneth Heritsch, was convicted of aggravated driving with a revoked or suspended license (DWLR) (625 ILCS 5/6-303(d-5) (West 2008)). He was sentenced as a Class X offender (see 730 ILCS 5/5-5-3(c)(8) (West 2008)) to six years' imprisonment. Defendant was also convicted of operating an uninsured motor vehicle (625 ILCS 5/3-707 (West 2008)) but was not separately sentenced for that offense. Defendant appeals, arguing that his conviction of aggravated DWLR cannot stand, because the State did not prove the aggravating factor, that defendant's license had been revoked for a violation of section 11-501 of the Illinois Vehicle Code (the Code) (625 ILCS 5/11-501 (West 2008)). We agree with defendant, affirm his conviction of operating an uninsured motor vehicle, reduce his conviction of aggravated DWLR to DWLR (625 ILCS 5/6-303(a) (West 2008)), and remand for sentencing on both convictions.

¶ 2      The indictment against defendant alleged that, on October 18, 2008, he drove on a highway while his license was revoked (625 ILCS 5/6-303(a) (West 2008)) and that, because "said revocation [was] for a violation of 625 ILCS 5/11-501," that is, driving under the influence of alcohol (DUI), and defendant had at least 14 prior convictions of DWLR, he had violated section 6-303(d-5) of the Code. Section 6-303(d-5) reads:

> "Any person convicted of a fifteenth or subsequent violation of this Section is guilty of a Class 2 felony, and is not eligible for probation or conditional discharge, if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, or a statutory summary suspension under Section 11-501.1 of this Code." 625 ILCS 5/6-303(d-5) (West 2008).

¶ 3      At defendant's trial, the parties stipulated that a police officer would testify that, on

October 18, 2008, he stopped defendant's car and defendant admitted that he was driving with a revoked license and did not produce proof of insurance. The trial court admitted a copy of defendant's driving abstract. Defendant argued that the abstract did not prove his guilt of aggravated DWLR, as it did not show that the revocation was for DUI; rather, it showed that his license had been revoked in 1991 for a controlled-substance offense and had never been reinstated. The trial court held that the issue was for sentencing, not the trial. It found defendant guilty of the two offenses.

¶ 4      At sentencing, the State argued in part that defendant's driving abstract showed that the revocation of his license had been for DUI. Defendant countered that the abstract reflected that, in 1991, his license was revoked because he had used a car to commit a drug-related felony and that, since then, he "never got his license back." Defendant conceded that the abstract also reflected that, on October 11, 2001, his license was revoked because he had recently committed DUI. The basis for each listed revocation was section 6-205(a) of the Code, which, as pertinent here, reads:

> "Except as provided in this Section, the Secretary of State shall immediately revoke the license, permit, or driving privileges of any driver upon receiving a report of the driver's conviction of ***:
>
>     ***
>
>     2. Violation of Section 11-501 of this Code or a similar provision of a local ordinance relating to the offense of operating or being in physical control of a vehicle while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds, or any combination thereof;
>
>     3. Any felony under the laws of any State or the federal government in the commission of which a motor vehicle was used[.]" 625 ILCS 5/6-205(a)(2), (a)(3) (West 2008).

¶ 5      Defendant reasoned that, because his license had been revoked continuously since 1991, it could not have been "re-revoked" for the DUI 10 years later. Thus, the revocation in effect as of October 18, 2008, was not for DUI but for the drug offense, so that defendant was guilty only of Class A misdemeanor DWLR. The trial court, without explanation, rejected this argument, held that defendant was guilty of aggravated DWLR, and sentenced him to six years' imprisonment. Defendant moved to reconsider the sentence, again arguing that he could not be convicted of aggravated DWLR as charged. The trial court denied the motion, and defendant timely appealed.

¶ 6      On appeal, defendant contends that the State proved only that he committed DWLR, not that he committed aggravated DWLR. Defendant relies on what he sees as the plain language of section 6-303(d-5) of the Code, as applied to the undisputed facts. He observes that, to obtain a conviction of aggravated DWLR as charged, the State had to prove that he had driven with a revoked license *and* that the revocation was for DUI. He notes that the evidence is undisputed that, as of October 18, 2008, his license had been revoked continuously since 1991 and that "the revocation" that made this so was based on a drug offense, not DUI. We agree with defendant.

¶ 7      The issue on appeal is primarily one of statutory construction, which raises questions of

-3-

law that we review *de novo*. See *In re Detention of Hardin*, 238 Ill. 2d 33, 40 (2010). Our goal is to ascertain and effectuate the legislature's intent, which is best indicated by the language of the statute itself. *Id.* However, if a statute's language is unclear, we may resort to similar statutes or other sources to aid our inquiry. See *People v. Masterson*, 207 Ill. 2d 305, 329 (2003) (citing *Mowen v. Holland*, 336 Ill. App. 3d 368, 374 (2003)). One such source includes the maxim of *in pari materia*, under which two statutes, or two parts of one statute, concerning the same subject must be considered together to produce a " 'harmonious whole.' " *People v. Rinehart*, 2012 IL 111719, ¶ 26 (quoting *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992)).

¶ 8        Both parties agree that section 6-303(d-5) of the Code is not ambiguous, and we find no ambiguity. However, section 6-303(d-5) is silent as it pertains to multiple revocations. Therefore, we must look to other statutes in the Code to aid our inquiry. On October 18, 2008, defendant was cited for DWLR. The Code defines "revocation of driver's license" as "[t]he termination by formal action of the Secretary of a person's license or privilege to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the Secretary after the expiration of at least one year after the date of revocation." 625 ILCS 5/1-176 (West 2008); see also *People v. Suddoth*, 52 Ill. App. 2d 355, 359 (1964) (defining "revocation"). A revoked license is terminated from the date of its revocation. *Suddoth*, 52 Ill. App. 2d at 358. In the present case, defendant's driver's license had been revoked, or terminated, since 1991.

¶ 9        Defendant's driving abstract reflects another revocation of the same license in 2001, based on his recent commission of DUI. However, a revoked driver's license remains revoked until a new license is issued. *People v. Morrison*, 149 Ill. App. 3d 282, 284 (1986). The Code does not provide any guidance or rules in circumstances, such as here, where the Secretary has imposed additional revocations of an individual's driver's license for additional offenses committed after the original revocation but where the driver has never applied for a new license or where the Secretary has never issued the driver a new license. Therefore, as applied to the facts of this case, the Secretary's 2001 formal administrative sanction of revocation had no effect because the Secretary had never issued defendant a new license.

¶ 10       Reading section 1-176 in conjunction with sections 6-205(a)(3) and 6-303(d-5) of the Code, the legislative intent becomes clear. Section 1-176 provides for only one revocation of an individual's driver's license. The reason for defendant's 1991 revocation was a drug offense, which triggered subsection (3) of section 6-205(a) of the Code, not subsection (2). Section 6-303(d-5) speaks of "*the* revocation or suspension" (emphasis added) (625 ILCS 5/6-303(d-5) (West 2008)), implying that there is only *one* pertinent triggering event. Therefore, the 1991 revocation of defendant's license to which section 6-303(d-5) refers was not based on a triggering event in section 6-303(d-5). Accordingly, the State proved that defendant committed only the offense of DWLR and not the offense of aggravated DWLR.

¶ 11       Our holding appears to place defendant in a better position than he would have been had his license not been revoked until 2001, after he committed DUI. However, we cannot escape the plain language and meaning of section 6-303(d-5), and, even if we could ignore the legislature's unambiguous command, it is far from clear that we could construe the statute

-4-

liberally so as to reach a different conclusion. See *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 81 (2009) (stating that a cardinal rule of statutory construction prohibits courts from rewriting a statute and departing from its plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature (citing *In re Michelle J.*, 209 Ill. 2d 428, 437 (2004))). The State might have been in a better position had the legislature used inclusive language in drafting section 6-303(d-5) of the Code, *e.g.*, "any revocation," "if the violation was for," or words to that effect, but it apparently declined to do so, and we decline to rewrite the statute or read beyond the statute's plain language. To the extent that the plain meaning of section 6-303(d-5) creates a result that seems unsatisfactory or anomalous, it is up to the legislature to correct that problem.

¶ 12     We note that the trial court ruled that the State needed to prove the enhancing factor not at trial, but only at sentencing. Despite the trial court's ruling, section 6-303(d-5) creates an essential element of a distinct offense, aggravated DWLR. Our resolution of this appeal, however, obviates the need to address the propriety of that ruling. See *People v. Campa*, 217 Ill. 2d 243, 269-70 (2005) (reviewing court will not render an advisory opinion when it cannot result in appropriate relief to the prevailing party). Accordingly, we affirm defendant's conviction of operating an uninsured motor vehicle; reduce his conviction of aggravated DWLR to simple DWLR; and remand the cause for sentencing on the reduced conviction and on the insurance conviction (see *People v. Frantz*, 150 Ill. App. 3d 296, 300 (1986)).

¶ 13     Affirmed as modified; cause remanded.

¶ 14     JUSTICE BIRKETT, dissenting.

¶ 15     I respectfully dissent. The initial filing by the Office of the State Appellate Defender in this case was a motion to withdraw as counsel on appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967). In his memorandum of law in support of his motion to withdraw, counsel argued that it would be frivolous to argue on appeal that defendant was not revoked for DUI in 2001 because, when he was convicted of DUI, he was already revoked for a non-DUI offense. I believe that the motion to withdraw should have been granted because, as I explain below, defendant's argument has no merit.

¶ 16     My colleagues point out that the trial court denied without comment defendant's oral motion to be sentenced for a misdemeanor. In fact, the trial court said that it had considered the motion. What my colleagues fail to acknowledge is that, in the trial court, defense counsel did not cite a single case for the proposition that someone whose privilege to drive has been revoked for one reason cannot have it rerevoked for another reason. He could not cite a case because there is no case anywhere in the country that supports this position. The indictment in this case alleged that defendant drove a motor vehicle upon a highway of this state "at a time when his driving privileges were revoked in violation of 625 ILCS 5/6-303 said revocation being for a violation of 625 ILCS 5/11-501." The trial court said at trial that it was a sentencing issue. During the sentencing hearing the court found defendant to be Class X eligible. Defense counsel filed a motion to reconsider on May 14, 2009. In the

motion, defendant merely reasserted that he was "not revoked due to driving under the influence." Again, there was no authority cited.

¶ 17        The majority fails to distinguish cases cited in the State's brief, which I will address. Also, the majority claims that the Code does not provide any guidance or rules for a situation involving a person, like defendant, with multiple revocations who has never applied for or had issued to him a new license. I will demonstrate that just the opposite is true. Finally, the majority fails to apply the first rule of statutory construction, which is to give effect to the intent of the legislature. *People v. Smith*, 345 Ill. App. 3d 179, 184 (2004).

¶ 18        The majority appears to be stuck on the term "the revocation" in section 6-303(d-5) of the Code (625 ILCS 5/6-303(d-5) (West 2008)) and then applies section 1-176 of the Code (625 ILCS 5/1-176 (West 2008)), concluding that until a new license is issued there can be only one revocation. That narrow interpretation ignores the clear intent of the legislature and it is at odds with numerous provisions of the Code, only some of which I will discuss. It must be remembered that section 6-303(d-5) is a sentencing enhancement. *People v. Nunez*, 236 Ill. 2d 488, 499 (2010). The State was required to identify "the revocation" in the indictment, along with the requisite number of convictions. The certified abstract introduced into evidence established the DUI revocation and the convictions. Defendant never challenged the abstract's accuracy. In the absence of such a challenge, the abstract's contents are deemed accurate. *People v. Meadows*, 371 Ill. App. 3d 259, 263 (2007).

¶ 19        The majority acknowledges that the Illinois Secretary of State entered a mandatory order of revocation on his driving record on October 11, 2001 as a result of his August 22, 2001, conviction of DUI (625 ILCS 5/6-205(a)(2) (West 2000)). The abstract reflects that this revocation remained in effect at the time of the instant offenses. Defendant argues that, despite these facts, the unambiguous language of the enhanced sentencing provision of section 6-303(d-5) of the Code (625 ILCS 5/6-303(d-5) (West 2008)) does not apply to him, because the term "the revocation" as used in the provision refers to a single revocation, and, since defendant's driver's license had been revoked for a non-DUI offense at the time of his October 11, 2001, DUI revocation, "there was no driver's license to revoke." Defendant reasons that the statute cannot refer to multiple revocations, because that is "only possible if a revoked driver's license can subsequently be revoked." Alternatively, defendant argues that, if the term "the revocation" as used in section 6-303(d-5) of the Code is ambiguous, the rule of lenity mandates a finding that the enhanced sentencing provision does not apply to him and that his conviction should be modified to misdemeanor DWLR and that he should be sentenced accordingly. *Id.*

¶ 20        The State agrees with defendant's contention that the language of section 6-303(d-5) of the Code is unambiguous. *Id.* However, the State contends that the plain language of subsection (d-5) does not support defendant's view. The State, relying on *People v. Kennedy*, 372 Ill. App. 3d 306 (2007), argues that "the construction of section 6-303(d-5) urged by the defendant revises the plain language of the statute to include a limitation not expressed by the legislature and would defeat the legislative intent, which is to punish those who repeatedly violate section 6-303 more severely."

¶ 21        Defendant's novel argument fails upon review of the overall statutory scheme and

relevant case law. When interpreting a statute, our primary objective is to ascertain and give effect to the legislature's intent. *People v. Zimmerman*, 239 Ill. 2d 491, 497 (2010). Our first step is to examine the language of the statute, which is "the surest and most reliable indicator of legislative intent." *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). If a statute does not provide a definition indicating a contrary legislative intent, words in the statute are interpreted according to their plain and ordinary meanings. *People v. Liberman*, 228 Ill. App. 3d 639, 648 (1992). When the language of a statute is clear, it may not be revised to include exceptions, limitations, or conditions that were not expressed by the legislature. *People v. Goins*, 119 Ill. 2d 259, 265 (1988). The majority ignores our responsibility to construe the statute as a whole so that no part is rendered meaningless or superfluous. See *People v. McClure*, 218 Ill. 2d 375, 382 (2006). We are required to construe the statute by interpreting words and phrases in light of other relevant provisions in the statute. The majority completely fails to consider the law's purpose, the evils sought to be remedied, and the consequences that would result from construing the statute one way or another. *Zimmerman*, 239 Ill. 2d at 497. "[W]hen the literal construction of a statute would lead to consequences which the legislature could not have contemplated, the courts are not bound to that construction." *People v. Hanna*, 207 Ill. 2d 486, 498 (2003).

¶ 22 "When determining the legislative intent of the criminal penalties associated with driving offenses as they relate to driver's license status, our courts have read the licensing provisions together with the penalty provisions." *People v. Rosenbalm*, 2011 IL App (2d) 100243, ¶ 8; see *People v. Sass*, 144 Ill. App. 3d 163, 169 (1986); *People v. Manikas*, 106 Ill. App. 2d 315, 319-20 (1969). Where a statute is amended, striking words, it is to be concluded that the legislature deliberately intended to change the law. *People v. Bradley M.*, 352 Ill. App. 3d 291, 296 (2004). It should also be presumed that an amendment is made for some purpose, and effect must be given to the amendment in a manner consistent with that purpose. *Id.* We also consider the regulations that guide the return of driving privileges following revocation. These regulations are promulgated by the Secretary of State and have the force and effect of law. *Youle v. Edgar*, 172 Ill. App. 3d 498, 503-04 (1988).

¶ 23 It is abundantly clear that when he was arrested for DWLR defendant's privilege to drive a motor vehicle was revoked for having been convicted of DUI. The analysis should begin with the language of section 6-303(a) of the Code (the offense language) and section 6-303(d-5) of the Code (the felony enhancement factor). 625 ILCS 5/6-303(a), (d-5) (West 2008). Those sections provide, in pertinent part:

"§ 6-303. Driving while driver's license, permit or privilege to operate a motor vehicle is suspended or revoked.

(a) Except as otherwise provided in subsection (a-5), any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit or privilege to do so *or the privilege to obtain a driver's license or permit is revoked* or suspended by this Code ***[.]

* * *

(d-5) Any person convicted of a fifteenth or subsequent violation of this Section is guilty of a Class 2 felony, and is not eligible for probation or conditional discharge, *if the*

*revocation or suspension* was for a violation of Section 11-401 or 11-501 of this Code, or ***[.]" (Emphases added.) 625 ILCS 5/6-303(a), (d-5) (West 2008).

¶ 24    Throughout his brief, defendant maintains that he was charged with and convicted of aggravated DWLR and that, because his license had already been revoked for a non-DUI offense, "it could not be subsequently re-revoked for DUI." The bill of indictment in this case charged defendant with "Aggravated Driving After Revocation in that he drove a motor vehicle upon a highway in this state at a time when his *driving privileges were revoked* in violation of 625 ILCS 5/6-303 said revocation being for a violation of 625 ILCS 5/11-501." (Emphasis added.) The indictment goes on to list defendant's 14 prior convictions of DWLR, in violation of section 6-303(d-5) of the Code. 625 ILCS 5/6-303(d-5) (West 2008). Defendant is correct that he did not have a license to revoke. However, "the term 'license to drive' encompasses two distinct meanings: (1) the physical document itself, and (2) the abstract or intangible privilege of driving." *People v. Odumuyiwa*, 188 Ill. App. 3d 40, 44 (1989).

¶ 25    As section 6-303(a) of the Code provides, it is unlawful to drive when your "privilege to do so or the *privilege to obtain a driver's license or permit is revoked or suspended*." (Emphasis added.) 625 ILCS 5/6-303(a) (West 2008). The Secretary of State is mandated to keep records of "all licenses and permits refused, cancelled, disqualified, revoked, or suspended and of the revocation, suspension, and disqualification of driving privileges of persons not licensed under this Chapter, and such records shall note the reasons for such action." 625 ILCS 5/6-117(b) (West 2008). The Secretary also maintains records of convictions reported by the courts. 625 ILCS 5/6-117(c) (West 2008). The courts provide the Secretary with records of convictions because these records are essential to the performance of the Secretary's duties "to cancel, revoke or suspend the driver's license and *privilege* to drive motor vehicles" (emphasis added) (625 ILCS 5/6-204(a) (West 2008)) and "[f]or the purpose of providing the Secretary of State with records necessary to properly monitor and assess driver performance and assist the courts in the proper disposition of *repeat traffic law offenders*" (emphasis added) (625 ILCS 5/6-204(d) (West 2008)).

¶ 26    When a defendant is convicted of DUI, which carries with it the mandatory revocation of the privilege to drive or the privilege to obtain a driver's license, the judge hearing the case requires the surrender to the clerk of any license or permit then held by the defendant, and, within five days thereafter, the clerk forwards the license or permit together with a report of conviction to the Secretary of State. See 625 ILCS 5/6-204(a)(1) (West 2008). Upon receiving a report of conviction of DUI, the Secretary enters a mandatory revocation of the "license, permit, or driving privileges" of the defendant. See 625 ILCS 5/6-205(a)(2), 11-501.1(d) (West 2008). These provisions contain no exceptions or limitations for drivers who are already revoked when the convictions are reported, and we may not depart, as the majority does in this case, from the plain language of these provisions by reading into them "exceptions, limitations, or conditions that conflict with the expressed intent." (Internal quotation marks omitted.) *People v. Cardamone*, 232 Ill. 2d 504, 516 (2009).

¶ 27    Contrary to the majority's analysis, the term "the revocation" in section 6-303(d-5) of the Code (625 ILCS 5/6-303(d-5) (West 2008)) refers not just to the physical license to drive but also to the "abstract or intangible privilege of driving" (*Odumuyiwa*, 188 Ill. 2d at 44), as

well as to the "privilege to obtain a driver's license or permit" (625 ILCS 5/6-303(a) (West 2008)). While defendant's driver's license and privilege to drive were already revoked when he was convicted of and revoked again for DUI in 2001, the entry of an order of revocation for DUI on defendant's driving record resulted in additional obstacles for him in the event that he ever applied for a new license. Every applicant for a license must state whether his or her license has "ever been cancelled, suspended, revoked or refused, and, if so, the date and reason for such cancellation, suspension, revocation or refusal." 625 ILCS 5/6-106(b) (West 2008). As our supreme court explained in *People v. Turner*, 64 Ill. 2d 183, 186-87 (1976):

> "The legislature has established through section 6-208 the procedure to have driving privileges restored. It calls for the disclosure of the revocation or other action taken against the applicant and then provides that the Secretary shall not issue a license until he has investigated the applicant and determined that to grant the privilege of driving on the highways will not endanger the public safety or welfare."

See also 92 Ill. Adm. Code 1001.430 (2012). When a person, like defendant, has lost his or her driving privileges for an alcohol-related reason, he or she "must prove he does not have a current problem with alcohol, he is a low or minimal risk to repeat past abusive behavior and operate a motor vehicle while under the influence of alcohol, he has complied with all other standards as specified in the regulations, and the granting of driving privileges will not endanger public safety or welfare." *Grams v. Ryan*, 263 Ill. App. 3d 390, 396 (1994); see 92 Ill. Adm. Code 1001.420(e), 1001.430(c), 1001.440(b) (2012).

¶ 28    The "Provisions for Alcohol and Drug Related Revocations, Suspensions and Cancellations" contained in the Illinois Administrative Code require "[a]n alcohol and drug evaluation and the evidence of successful completion of treatment." 92 Ill. Adm. Code 1001.440 (2012). Before any driving relief will be granted by the Secretary, an administrative hearing must be held where the burden is on the petitioner to prove by clear and convincing evidence that he or she does not have a current problem with alcohol or other drugs and that he or she is at a low or minimal risk to repeat his or her past abusive behavior. 92 Ill. Adm. Code 1001.440(b) (2012). According to defendant's argument and the majority's interpretation, he could avoid these requirements because his license was not revoked for DUI. This interpretation would justify a person in defendant's position omitting a DUI revocation from his or her application for a new license. The law provides that an applicant must disclose "whether any such license has *ever* been *** revoked *** and, if so, the date and reason for such *** revocation." (Emphasis added.) See 625 ILCS 5/6-106(b) (West 2008). The majority observes that its holding "appears to place defendant in a better position than he would have been had his license not been revoked until 2001" and that "it is up to the legislature to correct that problem." *Supra* ¶ 11. This reasoning is inconsistent with the principle that in construing a statute we not only consider the "the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved," but "we also presume that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience or injustice." *People v. Botruff*, 212 Ill. 2d 166, 175 (2004) (citing *Pullen*, 192 Ill. 2d at 42, and *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000)).

¶ 29    The Criminal Code of 1961, article 36, provides that a vehicle used with the knowledge and consent of the owner in violation of an offense described in subsection (g) of section 6-303 of the Code is subject to seizure and forfeiture. 720 ILCS 5/36-1 (West 2008). Section 6-303(g) of the Code provides:

"The motor vehicle used in a violation of this Section is subject to seizure and forfeiture as provided in Sections 36-1 and 36-2 of the Criminal Code of 1961 if the person's driving privilege was revoked or suspended as a result of a violation listed in paragraph (1), (2), or (3) of subsection (c) of this Section or as a result of a summary suspension as provided in paragraph (4) of subsection (c) of this Section." 625 ILCS 5/6-303(g) (West 2008).

¶ 30    These examples illustrate that the majority's interpretation would undermine many of the State's efforts to stop drunk drivers from driving while their driver's licenses are suspended or revoked. Persons like defendant not only would be able to escape the penalties intended for scofflaws like him, but they could also escape the provisions allowing for seizure and forfeiture of motor vehicles owned by and driven by such persons.

¶ 31    Defendant's argument is similar to the argument made by the defendant in *People v. Bloomberg*, 378 Ill. App. 3d 686 (2008), which addressed an issue involving section 6-303(d) of the Code. See 625 ILCS 5/6-303(d) (West 2006). Section 6-303(d) is the sentencing enhancement provision that elevates driving on a suspended or revoked license or privilege from a Class A misdemeanor to a Class 4 felony for a person convicted of a second violation of section 6-303 (*id.*). At the time of Bloomberg's offense, subsection (d) read as follows:

"Any person convicted of a second violation of this Section shall be guilty of a Class 4 felony and shall serve a minimum term of imprisonment of 30 days or 300 hours of community service, as determined by the court, if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, a violation of Section 9-3 of the Criminal Code of 1961, relating to the offense of reckless homicide, or a similar out-of-state offense, or a statutory summary suspension under Section 11-501.1 of this Code." *Id.*

¶ 32    At the time of his arrest, Bloomberg was serving a statutory summary suspension under section 11-501.1 of the Code (625 ILCS 5/11-501.1 (West 2006)). Bloomberg had previously been sentenced to a term of court supervision for driving while his license was suspended (DWLS) in 1998. Bloomberg argued that he should not be sentenced pursuant to section 6-303(d), but the trial court disagreed and sentenced him pursuant to that section (625 ILCS 5/6-303(d) (West 2006)). On appeal, Bloomberg pointed to the prior version of the statute "as support for his contention that the trial court's interpretation improperly allows him to be sentenced for a felony for his first DWLS conviction following an enhanced suspension if he had any past DWLS violation, regardless of its basis." *Bloomberg*, 378 Ill. App. 3d at 688. The prior version of section 6-303(d) under which Bloomberg had received a sentence of court supervision required proof that the "original revocation or suspension" was for, among other things, "a violation of Section *** 11-501 of this Code *** or a statutory summary suspension under section 11-501.1 of this Code." 625 ILCS 5/6-303(d) (West 1998). The appellate court agreed with the trial court and found that Bloomberg was properly

sentenced under the provisions of subsection (d). In doing so, the court said:

> "All parties agree that under that version of the statute, Bloomberg would not be eligible to be sentenced as a felon because his original suspension was not for an enhanced violation. Amendment of the statute included, in part, deletion of 'original' (suspension). By amending the statute in that manner, the legislature intended to broaden the scope of felony sentencing to individuals whose second DWLS occurred while they were suspended for one of the enumerated enhancements, including statutory summary suspension. Because Bloomberg was convicted of DWLS in December 2006, and his license had been suspended, pursuant to section 11-501.1 of the Vehicle Code, the felony sentencing provisions apply to him under a plain reading of the statute. Had the legislature not intended to focus on a party's current suspension to determine if it was for an enumerated enhancement, it would not have deleted 'original' when amending the statute." *Bloomberg*, 378 Ill. App. 3d at 689.

The appellate court in *Bloomberg* also cited our opinion in *People v. Smith*, 345 Ill. App. 3d 179, 185 (2004), where we stated that the purpose of section 6-303(d) was to punish repeat offenders more severely than first-time offenders. *Bloomberg*, 378 Ill. App. 3d at 688.

¶ 33   After *Bloomberg* was decided, in 2008 the legislature reinserted the qualifying term "original" into subsection (d), but it did not amend the provision at issue in this case, subsection (d-5). When interpreting the language of subsection (d-5), we view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 34   An amendment to a statute is presumed to have a purpose and it is construed together with the original act to which it relates. *People v. Woodard*, 175 Ill. 2d 435, 444 (1997). When the legislature enacts an amendment, it is presumed to act with knowledge of prevailing case law, and it can amend a statute if it intends a construction that is "different from that given by a court." *Corwin v. Abbott Laboratories*, 353 Ill. App. 3d 848, 851 (2005). Clearly, the legislature recognized that, when it omitted the word "original" from subsection (d), a defendant like Bloomberg with only one prior DWLS violation, no matter the reason for the suspension, would be subject to felony sentencing for only his second violation, an admittedly harsh result. However, subsection (d-5), which does not contain the word "original," is consistent with the clear intent of the legislature to punish repeat offenders more severely, especially in a case where the offender has a revocation for DUI in effect at the time of the offense, as was the case here.

¶ 35   In the instant case, the majority refuses to look at the Code as a whole to determine legislative intent. Specifically, the majority states that "[t]he Code does not provide any guidance or rules in circumstances, such as here, where the Secretary has imposed additional revocations of an individual's driver's license for additional offenses committed after the original revocation but where the driver has never applied for a new license or where the Secretary has never issued the driver a new license. Therefore, as applied to the facts of this case, the Secretary's 2001 formal administrative sanction of revocation had no effect because

the Secretary had never issued a new license." *Supra* ¶ 9. The revocation of defendant's license or *privilege* to obtain a license was extended 11 times due to convictions that the majority says "had no effect." These extensions were the result of the subsequent convictions and new orders of revocation, which were all in effect at the time of defendant's arrest in this case. See 625 ILCS 5/6-303(b) (West 2006). I would also point out that defendant did in fact attempt to get a new license in 1996. He did so by providing false information on the application. The Secretary of State then revoked defendant's driving privileges by entry of an order of revocation pursuant to section 6-206(a)(9) of the Code, which, like his other revocations, remained in effect on October 8, 2008, as reflected in defendant's driving abstract. 625 ILCS 5/6-206(a)(9) (West 1996). The abstract also reveals that on September 3, 1996, the Secretary of State cancelled defendant's driving privileges pursuant to section 6-201(a)(5) of the Code. 625 ILCS 5/6-201(a)(5) (West 1996).

¶ 36      Under the majority's view, an offender cannot be revoked for DUI if he is already revoked for some other reason. Therefore, he could not be required to have an ignition interlock device and could then avoid prosecution for violating section 303(c-4) of the Code. See 625 ILCS 5/6-206(A), 6-303(c-4) (West 2008). Such a reading is clearly at odds with the legislative intent, which is to keep drunk drivers off the road. See 625 ILCS 5/1-129 (West 2008) (an ignition interlock device prevents a vehicle from starting until analysis of the driver's breath shows that his or her blood alcohol level is below a certain level).

¶ 37      The Appellate Court for the Fourth District explained in *Kennedy*, 372 Ill. App. 3d 306, that the legislature created in section 6-303 two sets of penalty schemes for persons convicted of DWLS or DWLR. The first set of penalties applies to persons who are convicted while their licenses are suspended or revoked but *not* for leaving the scene of a personal injury accident (625 ILCS 5/11-401 (West 2006)), DUI (625 ILCS 5/11-501 (West 2006)), a statutory summary suspension (625 ILCS 5/11-501.1 (West 2006)), or reckless homicide (720 ILCS 5/9-3 (West 2006)). See *Kennedy*, 372 Ill. App. 3d at 308-09. The second set of penalties applies to persons who have been convicted of DWLS or DWLR and the suspensions or revocations *were* the result of violations of section 11-401, 11-501, or 11-501.1 of the Code, or of section 9-3 of the Criminal Code of 1961. 625 ILCS 5/11-401, 11-501, 11-501.1 (West 2006); 720 ILCS 5/9-3 (West 2006); *Kennedy*, 372 Ill. App. 3d at 309.

¶ 38      In *Kennedy*, the appellate court rejected the defendant's argument that, to be eligible for a Class 4 sentence under subsection (d-3), a defendant must be convicted of "a fourth or subsequent violation" of subsection (d-3), which requires proof of a revocation or suspension for a violation of section "11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, a violation *** of the Criminal Code of 1961, relating to the offense of reckless homicide, *** or a statutory summary suspension under Section 11-501.1 of this Code." 625 ILCS 5/6-303(d-3) (West 2004). The court held that subsection (d-3) was not ambiguous, referring to section 6-303 of the Code. The court explained that, "if the legislature had intended to condition a Class 4 felony on the commission of four or more violations of subsection (d-3), it could have so stated." *Kennedy*, 372 Ill. App. 3d at 308.

¶ 39      Applying the reasoning in *Kennedy* to subsection (d-5), if the legislature had intended to limit the application of Class 2 nonprobationable felony sentencing to those individuals

whose "original" revocations were for one of the enumerated violations, it could have so stated.

¶ 40    The majority's interpretation of the term "revoked" or "revocation" and its definition of "driver's license" are in conflict with numerous provisions of the Code and with reported decisions of our appellate and supreme courts. For example, section 6-208(b)(1.5) of the Code deals with persons revoked for reckless homicide who then are convicted of DWLR. 625 ILCS 5/6-208(b)(1.5) (West 2008). That section provides as follows:

> "If the person is convicted of a violation of Section 6-303 of this Code committed while his or her driver's license, permit, or privilege was revoked because of a violation of Section 9-3 of the Criminal Code of 1961, relating to the offense of reckless homicide, or a similar provision of a law of another state, the person may not make application for a license or permit until the expiration of 3 years from the *effective date of the most recent revocation*." (Emphasis added.) *Id.*

The majority's interpretation would render section 6-205(c)(2) meaningless for repeat DUI offenders who are revoked and then convicted of DUI again after the initial revocation. That section provides, in relevant part:

> "If a person's license or permit is revoked or suspended due to 2 or more convictions of violating Section 11-501 of this Code or a similar provision of a local ordinance or a similar out-of-state offense, or Section 9-3 of the Criminal Code of 1961, where the use of alcohol or other drugs is recited as an element of the offense, or a similar out-of-state offense, *** that person, if issued a restricting driving permit, may not operate a vehicle unless it has been equipped with an ignition interlock device as defined in Section 1-129.1." 625 ILCS 5/6-205(c)(2) (West 2008).

¶ 41    The mandatory reporting requirements for the courts (625 ILCS 5/6-204 (West 2008)) and the mandatory revocation of licenses by the Secretary of State (625 ILCS 5/6-205 (West 2008)) apply regardless of whether a person is already under a suspension or revocation. See *Stewart v. Ryan*, 229 Ill. App. 3d 912, 914 (1992) (an already revoked driver was "again mandatorily revoked" for DUI).

¶ 42    The plain and ordinary meaning of the term "revocation" as used in subsection (d-5) refers to the status of the offender's "driver's license, permit or privilege to do so or the privilege to obtain a driver's license or permit." 625 ILCS 5/6-303(a) (West 2008). Defendant's driving abstract clearly stated that, at the time of his arrest in this case, defendant's driving privilege to obtain a license was revoked for DUI and he had been convicted of violating section 6-303(a) of the Code on at least 14 prior occasions. The language of section 6-303(a) is in accord with the Code's definition of "License to Drive," which states:

> "License to drive. Any driver's license or any other license or permit to operate a motor vehicle issued under the laws of this State including:
>
>    1. Any temporary license or instruction permit;
>
>    2. *The privilege of any person to drive a motor vehicle whether or not such person holds a valid license or permit.*

3. Any nonresident's driving privilege as defined herein." (Emphasis added.) 625 ILCS 5/1-138 (West 2008).

¶ 43    Defendant had multiple revocations and suspensions in effect at the time of the instant offenses. In *Gruchow v. White*, 375 Ill. App. 3d 480 (2007), the Fourth District explained that construing the term "license" to include driving privileges "complies with Illinois's 'strong public policy *** to keep repeat drunk drivers off the roads.' " *Id.* at 485-86 (quoting *Girard v. White*, 356 Ill. App. 3d 11, 19 (2005)).

¶ 44    *Nunez*, 236 Ill. 2d 488, involved a defendant who was convicted of both DWLR and aggravated DUI. Our supreme court held that DWLR was not a lesser-included offense of aggravated DUI and that convictions of both offenses did not violate the "one-act, one-crime" principle. Notably, the court said:

"[D]riving privileges were revoked, and *the revocation was for two previous violations* of section 11-501, one violation occurring on November 20, 1999, and the other violation occurring on January 26, 2002. This elevated the offense to a Class 3 felony. This DWLR charge was based on the fact that defendant drove his vehicle at a time when his driver's license was revoked for a previous violation of 11-501 of the Vehicle Code and he had been previously convicted of a violation of Section 6-303 of the Vehicle Code on May 10, 2000." (Emphasis added.) *Id.* at 492.

Although the issues were different, the facts in *Nunez* clearly reflect multiple entries of orders of revocation notwithstanding that the defendant was already revoked.

¶ 45    In *Odumuyiwa*, 188 Ill. App. 3d 40, this court addressed an argument very similar to the one advanced by defendant here. Odumuyiwa was convicted of both unlawful use of a driver's license (Ill. Rev. Stat. 1985, ch. 95½, ¶ 6-301) and DWLS (Ill. Rev. Stat. 1985, ch. 95½, ¶ 6-303). Odumuyiwa argued that, when the Secretary of State suspended his license, his driver's license had already been cancelled. Odumuyiwa argued that the "purported suspension must be regarded as a null act, the license having already been cancelled." (Internal quotation marks omitted.) *Odumuyiwa*, 188 Ill. App. 3d at 42. We agreed with the State that the Secretary "*may* suspend a driver's current driving privilege even after a driver's license has been previously cancelled, noting that there is no case law or statutory authority preventing him from doing so." (Emphasis added.) *Id.* at 43. We also said, "we see no reason why the Secretary, in addition to cancelling a license, may not also suspend a person's driving privilege thereby preventing a driver from applying for or reinstating a license during a specific period of time." *Id.*

¶ 46    The language in *Odumuyiwa* applies with even greater force to persons, like defendant, who are convicted of DUI even though they are already revoked. Such revocations, unlike the cancellation/suspension situation in *Odumuyiwa*, are mandatory for a reason. As in the case with all battles to reduce drunk driving, complete and accurate records are crucial for both the administrative functions of the Secretary of State and, more importantly, for appropriate sentencing.

¶ 47    Defendant's argument, which the majority accepts, is also similar to the argument advanced by the defendant in *People v. Masten*, 219 Ill. App. 3d 172 (1991). On March 7, 1990, Masten was arrested for and charged with felony DWLR in violation of section 6-303

(Ill. Rev. Stat. 1989, ch. 95½, ¶ 6-303) and with felony DUI in violation of sections 11-501(a)(2) and (d)(2) (Ill. Rev. Stat. 1989, ch. 95½, ¶ 11-501(a)(2), (d)(2)). Masten had been convicted of DUI and revoked for that offense in 1976. He was later convicted of DWLR three times, the latest being in 1983. On April 7, 1989, Masten pled guilty in Montgomery County, Illinois, to DUI, but he was never sentenced on that charge. Masten's driving abstract revealed that he was under a statutory summary suspension from May 13, 1989, through November 13, 1989. Masten obtained a Virginia driver's license on June 9, 1989. The trial court dismissed the charges because Masten had a Virginia driver's license, and it found that since no sentence was imposed on the 1989 DUI he was not eligible for a felony sentence. The Fifth District Appellate Court reversed the trial court's dismissal of both charges. The felony enhancement provision for DWLR under subsection (d) at the time of Masten's arrest provided that "[a]ny person convicted of a second or subsequent violation of this Section shall be guilty of a Class 4 felony if the original revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code." Ill. Rev. Stat. 1989, ch. 95½, ¶ 6-303(d). The court reiterated that, "[w]hen a defendant's driver's license has been revoked, he is not permitted to drive in Illinois until he obtains a license in compliance with the Illinois Vehicle Code." *Masten*, 219 Ill. App. 3d at 174.

¶ 48    The *Masten* court explained that the Driver's License Compact, to which both Illinois and Virginia are parties, was incorporated in the Code and that under the compact a "party-State may not grant a license to a person who has a party-State's license currently revoked unless one year has passed from the date of revocation and the application is permitted by law." *Id.*; see Ill. Rev. Stat. 1989, ch. 95½, ¶ 6-704(2). Unfortunately for Masten, even though well over a year had passed from the date of the revocation, the compact also provided that "a party-State may not grant a driver's license to a person who has a party-State's license suspended until the suspension period has ended." *Masten*, 219 Ill. App. 3d at 174; see Ill. Rev. Stat. 1989, ch. 95½, ¶ 6-704(1).

¶ 49    Because Masten was under a statutory summary suspension when he obtained the Virginia license, the appellate court held that the Virginia license was invalid under the compact and Masten remained revoked for the 1976 DUI when he was arrested on March 7, 1990. The court observed that, "[w]ere we to hold otherwise, it would lead to the absurd result that one whose license had been previously revoked could avoid the effect of the summary suspension by obtaining a license in a foreign State as defendant did in this case." *Masten*, 219 Ill. App. 3d at 175.

¶ 50    The court in *Masten* understood what is obvious from the Code and the case law. A revoked driver can be suspended; a suspended driver can be revoked; and a revoked driver can be revoked again and again, as defendant was in the instant case. As the Fourth District Appellate Court explained in *Sass*, 144 Ill. App. 3d 163:

"Finally, we note in passing the defendant's misguided contention that because only his *license* or *permit* was revoked under section 6–205(a)(2), and not his *privilege* to drive in the State of Illinois, he was therefore legally permitted to drive within this State by virtue of a valid foreign license. It is a matter of common knowledge that the operation of a motor vehicle is a privilege, and not a right. A driver's license, though, is issued in recognition of that privilege. The privilege to drive, and the license which is

-15-

given so that the privilege may be exercised, are by no means separate and divisible." (Emphases in original.) *Id.* at 170.

Defendant's argument and the majority's analysis in this case suffer from the same type of flawed logic as the defendants in *Masten* and *Sass*.

¶ 51        Although the majority and defendant put a new twist on an old theme, it is obvious from a review of the case law in our state that we recognize and give effect to suspension and revocation orders entered against persons who are already suspended or revoked. In *People v. Yaworski*, 2011 IL App (2d) 090785, the defendant was convicted of felony DUI (625 ILCS 5/11-501(a)(2) (West 2004)). The trial court imposed a Class 2 felony sentence. 625 ILCS 5/11-501(c-1)(3) (West 2004). Yaworski was found to be eligible for Class 2 nonprobationable felony sentencing because he committed his fourth DUI when he was revoked for a violation of section 11-501(a) of the Code. On appeal, Yaworski challenged the evidence offered to enhance his sentence. Yaworski argued that the State had not proven the "cause of the revocation." We held:

> "However, the full abstract plainly shows that on August 6, 2005, and *again* on August 12, 2005, defendant's license was revoked pursuant to section 6-205(a)(2) of the Code, which provides that, upon receipt of a report of a driver's DUI conviction, the Secretary of State shall immediately revoke the driver's license. 625 ILCS 5/6-205(a)(2) (West 2004). The abstract also indicates that the *revocations* remained in effect. Accordingly, the argument is without merit." (Emphases added.) *Yaworski*, 2011 IL App (2d) 090785, ¶ 8.

The majority makes no attempt to acknowledge *Yaworski*, a recent case from our district, or to explain the fact that in that case we specifically referred to the concept of multiple revocations.

¶ 52        In *People v. DiPace*, 354 Ill. App. 3d 104 (2004), our court upheld the defendant's convictions of felony DUI and felony DWLR. One of DiPace's arguments on appeal was that the State "failed to establish at sentencing that at the time of his arrest his license had been revoked for driving under the influence, as required under the aggravated version of both statutes." *Id.* at 115. In rejecting DiPace's argument, we stated:

> "However, the presentencing report in this case reveals not only defendant's prior driving-under-the-influence convictions, but also the fact that at the time of his arrest his *license was revoked due to those prior driving-under-the-influence convictions*." (Emphasis added.) *Id.*

¶ 53        This court recently addressed an argument that is somewhat similar to defendant's argument. In *Rosenbalm*, 2011 IL App (2d) 100243, the defendant was charged with two counts of aggravated DUI in that when he committed the offense of DUI he did not possess a valid driver's license. 625 ILCS 5/11-501(d)(1)(H) (West 2008). At the time of his arrest, Rosenbalm's license was being held as bond in another case and it had expired. He was unable to renew his license because he had outstanding traffic fines in other cases. Rosenbalm's motion to dismiss was denied. After a stipulated bench trial, the trial court imposed a Class 4 felony sentence. Rosenbalm maintained that he was not eligible for the felony enhancement because the statute reads, "the person committed the violation while he

or she did not possess a driver's license or permit or a restricted driving permit or a judicial driving permit" (625 ILCS 5/11-501(d)(1)(H) (West 2008)) and at the time of his arrest he had a driver's license but it just was *invalid* because it had expired. *Rosenbalm*, 2011 IL App (2d) 100243, ¶ 9. We rejected this argument and upheld Rosenbalm's conviction. We said, "[a]lthough, as defendant contends, the statute does not expressly refer to a valid driver's license, to read the statute to avoid application of the aggravating factor where a person possesses a revoked, suspended, or expired license would lead to absurd results." *Id.* ¶ 9. We noted that, contrary to Rosenbalm's argument (and defendant's arguments in this case), "the physical driver's license card merely represents the permission, *i.e.*, license, that the state has granted a person to drive on the state's roadways, *and it is this permission*, not the card, that a person must possess to legally drive on the roads of Illinois." *Id.* ¶ 10.

¶ 54    In *Rosenbalm*, we recognized that "the legislature has taken great effort to establish an elaborate scheme under which the Secretary of State is charged with maintaining records of who possesses valid driver's licenses in Illinois. See 625 ILCS 5/6-117 (West 2008) (records to be kept by the Secretary of State); 625 ILCS 5/6-204 (West 2008) (when courts are to forward license and reports to the Secretary of State)." *Id.* ¶ 11. We also said that the "elaborate scheme would be unnecessary if the legislature were not focused on penalizing those who operate vehicles without valid licenses." *Id.* ¶ 11. Likewise, this scheme would be unnecessary if the legislature were not focused on penalizing repeat offenders more severely than first-time offenders. Under the majority's analysis, the courts, the circuit court clerks, and the Secretary of State were engaged in a colossal waste of time and effort carrying out their mandated responsibility to record defendant's convictions of DUI and DWLR, because those convictions have no bearing on his punishment. He will, for all time, be a first-time offender. Such a reading is clearly inconsistent with the legislative intent.

¶ 55    In *People v. Smith*, 162 Ill. App. 3d 739 (1987), the defendant was convicted of felony DWLR. The appellate court, in affirming Smith's conviction, observed that, "[a]t trial, the State introduced as evidence three separate orders of revocation, certified by the Secretary of State, all of which were for driving under the influence of intoxicating liquor and *all of which were in effect* on February 3, 1986." *Id.* at 741.

¶ 56    Consistent with the reasoning in *Smith*, Senator Dan Cronin, the sponsor of the law at issue in this case, explained the policy behind its creation on the Senate floor:

"This bill simply says that–it simply provides for a penalty enhancement. Penalty enhancement after a certain number of convictions for the offense of driving on a revoked driver's license is currently a Class 4. In this case, if the offender is guilty of–if the offender is guilty of driving on a revoked license, a person convicted of a fifth, sixth, seventh, eighth or ninth offense of driving on a revoked or–driver's license or permit is guilty of a Class 4. It provides that a person convicted of a tenth, eleventh, twelfth, thirteenth, fourteenth offense–sounds a little goofy, but it happens every day in our courts, unfortunately–is guilty of a Class 3 felony, and a person that's convicted of a fifteenth or subsequent offense–sixteenth, seventeenth and so forth–would be guilty of a Class 2 felony. These are the very serious, most dangerous drivers, who we just are–are so frustrated and all of us have tried very hard here to figure out a way to get them off the roads. They are–they are just driving time bombs just waiting and–to–to wreck [*sic*]

-17-

havoc and to ruin people's lives. We got to get 'em off the road, these repeat offenders, and the only thing we can do in this bill is to make the penalties more severe and keep 'em locked up." 94th Ill. Gen. Assem., Senate Proceedings, May 11, 2005, at 96 (statements of Senator Cronin).

¶ 57    In this case, defendant's "permission" was revoked in 1991, but he continued to ignore the law and racked up an amazing number of convictions, including DUI, which was added to the "cause" for his revocation in 2001. He should not be allowed to escape the plain and ordinary meaning of section 6-303(a) of the Code; his "privilege" to drive or "privilege to obtain a driver's license" was revoked for DUI as well as for the other violations reflected in the orders of revocation entered on his driving abstract by the Secretary of State.

¶ 58    My research of other states has located only one case in which a defendant argued, as defendant here does, that an "order purporting to revoke his driver's license was invalid because he had no license to revoke when the order was issued." *Fielding v. State*, 733 P.2d 271 (Alaska Ct. App. 1987). The State of Alaska is a member of the Nonresident Violator Compact. See 625 ILCS 5/6-700 *et seq.* (West 2008). I agree with the analysis by the appellate court in *Fielding* and would adopt it here. In *Fielding*, the defendant was first revoked in 1981, with the revocation set to terminate in 1984. Less than a month after the revocation began, Fielding was convicted of DUI. Pursuant to statute, his license was revoked for another year. Like the defendant in this case, Fielding continued to rack up DWLR convictions, each of which extended the revocation. Similarly, in this case defendant's revocation was automatically extended by the Secretary of State upon receipt of each notice of conviction for a period of one year "from the date of such conviction." 625 ILCS 5/6-303(b-3) (West 2008).

¶ 59    In the instant case, defendant's abstract reveals 11 extensions of revocation. The abstract also reveals that defendant was revoked for DUI on October 11, 2001, and that the order of revocation remained in effect at the time of his arrest in this case. The legislature clearly intended that an order of revocation for DUI would be given effect by our courts even though the offender has already been revoked for other reasons at the time of the DUI. In *Fielding*, the appellate court rejected the defendant's argument and held that the revocation was valid, "even though, when it is ordered, the defendant technically no longer has a license to revoke." *Fielding*, 733 P.2d at 272. Likewise, here defendant's DUI revocation was valid and must be given effect, even though technically he had no valid license to revoke. This is because it is the abstract privilege to drive that was revoked and not merely the physical license. Defendant should not be allowed to avoid the statutorily prescribed punishments for aggravated DWLR, or the steps for reissuance of a driver's license as it relates to a DUI revocation, merely because he was initially revoked for a non-DUI offense. I believe that such a result makes a mockery of the law and is an improper interpretation of the statute.

¶ 60    It is a matter of common knowledge that entry of suspension and revocation orders on a driving record depend upon previous misconduct in the operation of a motor vehicle. See *People v. Archibald*, 3 Ill. App. 3d 591, 594 (1972). Also, the majority and defendant do not dispute the accuracy of the information contained in his driving abstract. The abstract is "prima facie evidence of facts therein stated," including "proof of prior conviction or proof of records, notices, or orders recorded on individual driving records maintained by the

Secretary of State." 625 ILCS 5/2-123(g)(6) (West 2008); see *Meadows*, 371 Ill. App. 3d at 261.

¶ 61    I maintain, as the defendant in *People v. Lucas*, 231 Ill. 2d 169, 177 (2008), argued, that "the only difference among legal driving, misdemeanor driving while license revoked, and driving while license revoked, subsequent offense, is the state of the driver's record." The Illinois Supreme Court agreed with Lucas. It held that a subsequent DWLR offense (625 ILCS 5/6-303(d) (West 2004)) could not serve as a predicate for armed violence. However, the court affirmed Lucas's DWLR conviction with a sentencing enhancement due to prior convictions. *Lucas*, 231 Ill. 2d at 183.

¶ 62    The majority cites two cases, which were not cited by either party, to support its interpretation of the term "revocation." See *People v. Suddoth*, 52 Ill. App. 2d 355 (1964); *People v. Morrison*, 149 Ill. App. 3d 282 (1986). I agree with the analysis in both of these cases. These cases merely demonstrate that a revoked license remains revoked until an application for a new license is made and it is acted upon by the Secretary of State. However, these cases do not in any way support the majority's conclusion that "the Secretary's 2001 formal administrative sanction of revocation had no effect." *Supra* ¶ 9.

¶ 63    The majority misses the point of *Suddoth* and *Morrison*, which is that the restoration of one's driving privileges is not automatic. Unlike a suspension, where privileges can be reinstated after the suspension period has expired and upon payment of a fee, a revocation requires a person to demonstrate to the Secretary that "after a review or investigation of such person, *** to grant the *privilege* of driving a motor vehicle on the highways will not endanger the public safety or welfare." (Emphasis added.) 625 ILCS 5/6-208(b) (West 2008). A person, like defendant in this case, who has been revoked for DUI must prove that "he does not have a current problem with alcohol, he is a low or minimal risk." *Grams*, 263 Ill. App. 3d at 396. The burden is on the applicant for a new license to prove "by clear and convincing evidence" that he is entitled to be granted driving privileges. *Id.* The applicant's total driving record may be considered in determining an application for reinstatement. *Grams*, 263 Ill. App. 3d at 398; *Caracci v. Edgar*, 160 Ill. App. 3d 892, 897 (1987). The majority's analysis is inconsistent with decades of precedent holding that the proper method of showing a revocation of a defendant's driver's license (privilege to drive) and the reasons for such action is by introducing a certified copy of the defendant's driving abstract. See *People v. Prano*, 44 Ill. App. 2d 273 (1963); *People v. Wallace*, 9 Ill. App. 3d 129 (1973); *Smith*, 162 Ill. App. 3d at 742; 625 ILCS 5/2-108, 3-303(f), 6-117(b) (West 2008).

¶ 64    In this case, the revocation for DUI in 2001, according to defendant's driving abstract, clearly shows the entry of a DUI conviction and a mandatory revocation for that offense, which remained in effect on the date of the offenses in this case. In *People v. Morrison*, 149 Ill. App. 3d 282, 284 (1986), the court observed that, "[f]rom the above statutory and case law, it is apparent that the *revocation period* is the time period when a person may not apply for a new license." (Emphasis added.) Here, defendant was originally revoked in 1991 for using a motor vehicle in the commission of a felony. The original order of revocation, which would have expired one year from the date of revocation (625 ILCS 5/1-176, 6-208(a) (West 2008)), never expired because defendant continued to commit offense after offense, including his 2001 DUI, which is reflected in his driving abstract by "Type of Action 94

(immediate action conviction)" on August 22, 2001, and "Type of Action 01 (mandatory revocation)" for that offense on October 11, 2001. *Morrison* then clearly supports the common and ordinarily understood meaning of the term "revocation." Contrary to the majority's conclusion, defendant's 2001 DUI conviction and revocation clearly had an effect on the period during which defendant could not apply for a new license. In other words, defendant's privilege to obtain a license was now terminated for DUI as well as the other reasons noted on his abstract.

¶ 65    Neither the majority nor defendant cites any cases or any other authority that would entitle this court to disregard the information contained in his driving abstract, namely, that he was convicted of and revoked for DUI in 2001 and that said revocation remained in effect at the time of the instant offenses.

¶ 66    At his sentencing hearing, defendant offered, as a reason for driving in violation of the law, that he had to get to work. The court succinctly summarized the rationale behind the penalty scheme for recidivist revoked drivers:

> "THE DEFENDANT: I arranged myself a ride to work every day, sir, up until that day.
>
> THE COURT: Look, you know, there's this theory about what's the big deal I was only driving a car, I am not hurting anybody, I am going to work, I am supporting my children. That's a lot of bologna [*sic*], absolute bologna [*sic*].
>
> THE DEFENDANT: I understand that, sir.
>
> THE COURT: It's a continuing flagrant violation of the law. People are of the opinion what are you getting excited about people driving revoked and suspended. You are a potential predator on the roadway. You crack up your car, you crack up people. They are totally innocent.
>
> THE DEFENDANT: I understand that, sir.
>
> THE COURT: But you, you shouldn't even be behind the wheel, but you are. The potential is there for great bodily harm, death, substantial damage, personally and property-wise. So it's not a poo-poo type of offense. Are you running around with a gun or a knife? Absolutely not. No one is suggesting that for one moment. But you have the potential, and we see it day in and day out here. People truly being hurt on account of offenders such as yourself, and it's a blight on this community, a plague on this community."

¶ 67    For the foregoing reasons, I believe that defendant was properly revoked for DUI in 2001, notwithstanding that his license or privilege to drive was previously revoked for a non-DUI offense, and the State properly relied upon "the revocation" in order to enhance defendant's sentence where his driving abstract revealed at least 14 prior convictions of violations of section 6-303 of the Code. 625 ILCS 5/6-303(d-5) (West 2008). I respectfully believe that the majority is in error in holding otherwise.